1
2
3
4
5
6
7
8

9                          UNITED STATES DISTRICT COURT

10                         SOUTHERN DISTRICT OF CALIFORNIA

11

12   BRYAN VO,                              Case No.:  24-cv-745-WQH-SBC

13                         Plaintiff,       **ORDER**

14   v.

15   GENERAL MOTORS, LLC, a
     Delaware Limited Liability
16   Company; and DOES 1 through
     10, inclusive,
17

18                         Defendants.

19   HAYES, Judge:

20          The matter before the Court is the Motion to Dismiss Plaintiff's Complaint for

21   Failure to State a Claim ("Motion to Dismiss") (ECF No. 5) filed by Defendant General

22   Motors LLC ("Defendant" or "General Motors").

23   **I.     BACKGROUND**

24          On March 25, 2024, Plaintiff initiated this action by filing a Complaint in the

25   Superior Court of California, County of San Diego, Case No. 37-2024-00013864-CU-BC-

26   CTL. (ECF No. 1-2, Compl.)

27          On April 24, 2024, Defendant removed the action to this Court on the basis that the

28   Court has diversity jurisdiction over this dispute. (ECF No. 1.)

On April 30, 2024, Defendant filed the Motion to Dismiss. (ECF No. 5.) On May 14, 2024, Plaintiff filed a Response in opposition to the Motion to Dismiss. (ECF No. 6.) On May 24, 2024, Defendant filed a Reply. (ECF No. 7.)

## II.    ALLEGATIONS IN THE COMPLAINT

In October 2015, Defendant "announced [a] partnership with LG to produce the Chevrolet Bolt and touted the vehicle as an affordable, long range vehicle." (Compl. ¶ 18.) In a January 2016 press release, Defendant "said the Bolt will have a battery range over 200 miles because of the use of a battery with improved thermal operating performance." *Id.* ¶ 19. "The mileage representation was made absent any reference to the EPA estimated mileage range." *Id.* In December 2016, Defendant "first became aware of issues with the battery in the Bolt." *Id.* ¶ 20. "As a result of issues with the battery and energy management related issues, General Motors instituted a Bolt EV High Voltage Battery Exchange and Internal Parts Process to replace defective batteries." *Id.* Despite this knowledge, Defendant started to run commercials in January 2017 that featured the Bolt's battery range, marketing the Bolt as a "'long range' and 'affordable' vehicle." *Id.* ¶ 21.

"In October 2017, [the National Highway Traffic Safety Administration ('NHTSA')] published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition." *Id.* ¶ 22.

In November 2017, Defendant created a Bolt repair program "in response to findings of issues with low voltage in the batteries." *Id.* ¶ 23.

In April 2018, Defendant "created another program to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion." *Id.* ¶ 24. In May 2018, Defendant "again notified its dealers regarding issues with the batteries in the Bolt." *Id.* ¶ 25.

In August 2018, Defendant "created another program related to the battery's software and its ability to monitor the charge of the battery." *Id.* ¶ 26.

In March 2019, Defendant "became aware of the first battery fire involving the Chevrolet Bolt." *Id.* ¶ 27.

"Despite the foregoing, in October 2019, General Motors made Adam Piper, a GENERAL MOTORS employee and Bolt battery expert, available to answer questions regarding the Chevy Bolt." *Id.* ¶ 28. "Mr. Piper, on behalf of [and as authorized to speak on behalf of] GENERAL MOTORS, stated: 'We engineered the battery system so that you can charge to 100% and maximize range. Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%.'" *Id.* This statement was made despite Defendant's knowledge of the fire risk when fully charging the battery.

Defendant also created a marketing brochure for the 2020 Chevrolet Bolt that "represent[ed] that the vehicle can be charged safely, at home, in a garage." *Id.* ¶¶ 29–30. "The marketing brochure also represents that the vehicle's battery can be charged to 100 percent." *Id.* ¶ 31. Defendant "knew this was not safe based upon the risk of fire that had been reported in March 2019 and the previous advisory NHTSA in 2017 warning about charging batteries to 100 percent." *Id.* ¶ 30. Plaintiff reviewed the marketing brochure and "relied on the representations … that the vehicle's battery could be fully charged and could be charged indoors safely." *Id.* ¶¶ 29, 31.

On February 27, 2021, Plaintiff acquired a 2021 Chevrolet Bolt, VIN Number 1G1FZ6S00M4102793 (the "Subject Vehicle") from Bob Stall Chevrolet, an authorized dealer and agent of Defendant. As part of the transaction, Defendant issued express warranties that the Subject Vehicle "would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the SUBJECT VEHICLE had defects, GENERAL MOTORS would repair the defects" and an 8-year, 100,000-mile warranty for the vehicle's battery. *Id.* ¶ 11. "[A]t no time prior to the sale of the subject vehicle did General Motors disclose the battery issues to Plaintiff or alter its marketing campaign with respect to the subject vehicle." *Id.* ¶ 27.

Plaintiff notified Defendant's authorized service and repair facilities, within a reasonable time after Plaintiff's discovery, when the Subject Vehicle "exhibited defects, non-conformities, misadjustments, or malfunctions." *Id.* ¶ 14. On each notified occasion, Plaintiff "attempted to invoke the applicable warranties, demanding that the authorized

repair facilities repair such nonconformities pursuant to the warranties." *Id.* "Defendant failed to make the SUBJECT VEHICLE conform to the applicable warranties, despite a reasonable amount of time and a reasonable number of attempts to do so." *Id.* ¶ 15. Plaintiff discovered that Defendant "was unable or unwilling to make the SUBJECT VEHICLE conform to the applicable warranties." *Id.* ¶ 16. Defendant "falsely represented that the subject vehicle is safe and functional for normal use." *Id.* ¶ 17. The Subject Vehicle, however, "is not safe or functional because the batteries may ignite when they are either fully charged or fall below seventy (70) miles remaining mileage" and "cannot be parked inside overnight due to fire risk." *Id.*

"In 2021, Defendant GENERAL MOTORS issued a recall notice for the subject vehicle, stating that its batteries may ignite when nearing a full charge." *Id.* ¶ 32. Defendant "warned Plaintiff that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight." *Id.*

In December 2021, Plaintiff received a letter from Defendant's Vice-President Steve Hill, wherein Hill "represented to Plaintiff that General Motors would provide [him] with a new battery for the subject vehicle that did not suffer from the safe [sic] defects as the battery which was installed at the time of purchase." *Id.* ¶¶ 49–50. "From December 2021 until June 2023, Plaintiff relied on Mr. Hill's representation that [he] would receive a new battery. Because of this representation, Plaintiff did not sell the vehicle or ask General Motors to repurchase [his] vehicle." *Id.* ¶ 52. In June 2023, however, Defendant "reneged on Mr. Hill's promise to replace Plaintiff's battery." *Id.* ¶ 51.

"For a period of time," Defendant's "policy was to repurchase vehicles such as Plaintiff[']s when asked to do so." *Id.* ¶ 53. "In June 2023, GENERAL MOTORS sent Plaintiff an e-mail that again stated [his] battery would be replaced." *Id.* ¶ 54. But "shortly thereafter GENERAL MOTORS told Plaintiff there had been a 'misunderstanding' and that [his] battery would not in fact be replaced. When Plaintiff found out [he] would not receive a new battery in June 2023 and requested GENERAL MOTORS repurchase [his]

vehicle," Defendant "refused to do so and continue[s] to refuse to do so." *Id.* ¶ 55. "To date, GENERAL MOTORS continues to refuse to replace [Plaintiff's] battery despite their promise to do so in December 2021." *Id.* ¶ 56.

The battery defect poses a significant safety risk to Plaintiff. "Plaintiff has suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein." *Id.* ¶ 34. "Plaintiff expected to use the vehicle without the fear of the vehicle igniting and causing serious bodily harm or death." *Id.* ¶ 43. "Due to the fact that Plaintiff cannot charge the vehicle overnight and instead must resort to sporadic charging times, the charge is severely limited," as is Plaintiff's "ability to use the vehicle." *Id.* ¶ 46. "Plaintiff has anxiety as a direct result of the risk the vehicle may spontaneously ignite." *Id.* ¶ 47.

Defendant "falsely represents the safety of the vehicle as well as the expected battery capacity of the vehicle." *Id.* ¶ 42. "The marketing material for the vehicle leads the reasonable consumer to believe they were purchasing an environmentally friendly vehicle that functions as a long-range vehicle, when, in reality they cannot charge the vehicles to their full battery capacity or drive the vehicle for long distances due to fear of falling below seventy (70) miles remaining on a single charge." *Id.* On its website, "among other places," Defendant "willfully, falsely, and knowingly marketed the subject vehicle as having long range capability." *Id.* ¶ 91. "The statements in the marketing were echoed by [Defendant's] dealership personnel at the time of sale who assured Plaintiff that the vehicle had a long-range and was safe." *Id.* This was a material fact because vehicle range is essential to a consumer's decision-making process in purchasing an electric vehicle. *Id.* ¶ 92. "Defendant's representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle." *Id.* Defendant knew its representations were false and intended for Plaintiff to rely on them. Plaintiff decided to purchase the Subject Vehicle based, in part, on the false and misleading representations.

The long-range capacity "was the centerpiece of Defendant's marketing efforts and featured prominently in virtually every advertisement and consumer communication." *Id.* ¶ 96. "Through dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues, Defendant pervasively and consistently represented that the vehicle had the best-in-class battery economy and touted its specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe." *Id.* Defendant concealed and suppressed the facts that the vehicle was not able to achieve its expected range and that there were safety issues resulting from the battery's overheating. Defendant concealed from Plaintiff that he would only be able to charge the Subject Vehicle to 90% and use the Subject Vehicle if he did not exceed 70 miles remaining. *Id.* ¶ 97. Plaintiff could not reasonably discover this defect, of which Defendant and its dealers had exclusive and superior possession, through due diligence. *Id.* ¶ 98.

Defendant's use of a defective battery in the Subject Vehicle causes injuries to Plaintiff, who cannot park the vehicle in a manner aligning with Plaintiff's reasonable expectations, has a vehicle of quality less than Plaintiff's expectations, and cannot avoid the injuries the defective battery causes. *Id.* ¶¶ 111–14.

Plaintiff now brings the following five claims against Defendant: (1) violation of the Song-Beverly Act – breach of express warranty, (2) violation of the Song-Beverly Act – breach of implied warranty, (3) violation of the Song-Beverly Act – Section 1793.2, (4) fraud, and (5) violation of California Business & Professions Code Section 17200 ("UCL").

Plaintiff seeks damages, rescission of the purchase contract, restitution, civil penalties, disgorgement, prejudgment interest, attorney's fees and costs, and other such relief as the Court deems just and proper.

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state

a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

## IV. DISCUSSION

Defendant moves to dismiss Plaintiff's fourth cause of action, which alleges fraud, and fifth cause of action, which alleges a violation of the UCL.

### A. Fraud Claim

Plaintiff's fourth cause of action is based on two theories of fraud: fraudulent misrepresentation and fraudulent concealment. (*See* Compl. ¶¶ 91–104.)

/ / /

/ / /

### 1.    Fraudulent Misrepresentation

Defendant contends that Plaintiff does not plead with particularity each element of the fraudulent misrepresentation claim. Defendant contends that Plaintiff fails to allege facts to show Defendant's knowledge at or before the time of purchase. Defendant contends that Plaintiff's fraudulent misrepresentation claim is based on unactionable EPA mileage range estimates.

To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) knowledge that the representation was false; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Agosta v. Astor*, 120 Cal. App. 4th 596, 603 (Ct. App. 2004). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the claimant allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 947 (S.D. Cal. 2020) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (Ct. App. 1991)).

Here, Plaintiff alleges the following facts: "In a press release in January 2016, General Motors said the Bolt will have a battery range over 200 miles because of the use of a battery with improved thermal operating performance"; Defendant first became aware of the Bolt's battery issues in December 2016; Defendant ran commercials starting in January 2017 featuring the Bolt's battery range, marketing it as a "long range" and "affordable" vehicle; Defendant created several repair programs related to the Bolt's batteries; Defendant notified its dealers of the battery issues; in March 2019, Defendant

"became aware of the first battery fire involving the Chevrolet Bolt"; in October 2019, Adam Piper, Defendant's employee designated to answer questions on behalf of Defendant, made a statement about the battery system being able to charge to 100% and maximize range; prior to his purchase of the Subject Vehicle, Plaintiff reviewed and relied upon Defendant's marketing brochure for the 2020 Chevrolet Bolt, which "represents that the vehicle can be charged safely, at home, in a garage" and that "the vehicle's battery could be charged to 100 percent"; at the time Plaintiff acquired the Subject Vehicle, Defendant advertised the vehicle "as having long range capability" on its website and Defendant's "dealership personnel … assured Plaintiff that the vehicle had a long-range and was safe." (Compl. ¶¶ 19–21, 23–31, 91.) Plaintiff alleges that Defendant's misrepresentations were false because the Subject Vehicle contained a lithium-ion battery that causes the vehicle to overheat when used for long periods of time, Defendant knew the misrepresentations were false, and Defendant intended for Plaintiff to rely on them. *Id.* ¶¶ 92–93.

Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the Complaint fails to allege facts with the requisite particularity to support a claim for fraud based on a theory of fraudulent misrepresentation. Importantly, Plaintiff fails to allege "who made the allegedly false representations to" Plaintiff and that Plaintiff heard and relied on these false representations. *Tarmann*, 2 Cal. App. 4th at 158. While Plaintiff alleges that Mr. Piper, on behalf of Defendant, made a statement regarding the vehicle's battery, Plaintiff does not adequately allege "to whom [Mr. Piper] spoke," "when it was said or written," or that Plaintiff heard and relied on this particular misrepresentation. *Id.* at 157.

As for Plaintiff's allegations regarding Defendant's advertisements and marketing materials, "[w]hile the same type of specificity is not necessarily possible with an alleged misrepresentation based on an advertising campaign, Plaintiff must still provide sufficient information to give Defendant the opportunity to respond to the alleged misconduct." *Zepeda v. Gen. Motors, LLC*, No. 3:23-cv-02305-W-JLB, 2024 WL 3732479, at *4 (S.D.

Cal. Aug. 8, 2024) (citing *Gutierrez v. Bausch Health US, LLC*, No. 21-55141, 2024 WL 1854288, at *1 (9th Cir. Apr. 29, 2024)) (finding that the plaintiff's "vague[ ]" allegations regarding the defendant's misrepresentations in "a press release in January 2016" and "commercials in January 2017 featuring the range of the Bolt's battery" did not have "the specificity required to identify the press release or commercials that included the misrepresentation"); *see Velazquez v. Gen. Motors LLC*, No. 2:24-cv-01519-DAD-CSK, 2024 WL 3617486, at *4 (E.D. Cal. Aug. 1, 2024) ("[A] plaintiff alleging affirmative misrepresentations in marketing and advertising must 'specify what the television advertisements or other sales material specifically stated,' 'when he was exposed to them and which ones he found material.'" (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009))). Here, Plaintiff's allegations regarding Defendant's 2016 press release, 2017 commercials, and advertisements on its website lack the specificity required under Rule 9(b).

Plaintiff's allegations regarding Defendant's marketing brochure for the 2020 Bolt come the closest to reaching the necessary specificity. Plaintiff alleges that this brochure "represents that the vehicle can be charged safely, at home, in a garage," and that "the vehicle's battery can be charged to 100 percent." (Compl. ¶¶ 30–31.) Plaintiff alleges Defendant knew its representations were false "based upon the risk of fire that had been reported in March 2019 and the previous advisory NHTSA in 2017 warning about charging batteries to 100 percent." *Id.* ¶ 30. Although it is not clear when Plaintiff reviewed this brochure, Plaintiff alleges that he "reviewed" and "relied upon [it]" prior to purchasing the Subject Vehicle. *Id.* ¶ 29. Nevertheless, Plaintiff has failed to adequately allege that reliance upon Defendant's purported misrepresentations regarding the 2020 Bolt is adequate to support his claims that Defendant misrepresented material facts about the Subject Vehicle, which is a 2021 Bolt. *See Luna v. Gen. Motors LLC*, No. 24-cv-02753-RS, 2024 WL 3173287, at *2 (N.D. Cal. June 24, 2024) (finding that the plaintiffs' fraudulent misrepresentation claim failed in part because they "point[ed] to a 'marketing

brochure for the 2020 Chevrolet Bolt' as a relevant misrepresentation by GM," despite having purchased a 2022 model).

In any event, Plaintiff fails to plead sufficient facts to adequately allege Defendant's knowledge, prior to Plaintiff's purchase of the Subject Vehicle, that its representations were false. Plaintiff's allegations regarding Defendant's pre-transaction knowledge of issues with "the Bolt" all concern different model years than the Subject Vehicle, which is a 2021 Bolt. For example, Plaintiff alleges that "in December 2016, General Motors first became aware of issues with the battery in the Bolt"; "in October 2017, NHTSA published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition"; in November 2017, April 2018, and August 2018, Defendant created repair programs to address "low voltage," "vehicles losing propulsion," and software issues with the Bolt; in May 2018, Defendant "notified its dealers regarding issues with the batteries in the Bolt"; and "[i]n March 2019, General Motors became aware of the first battery fire involving the Chevrolet Bolt." (Compl. ¶¶ 20, 22–27.) None of these allegations plausibly support an inference of Defendant's knowledge of issues with the safety or charging capacity of 2021 Bolts, in particular.[1] *See King v. Gen. Motors LLC*, No. 24-cv-00040-SI, 2024 WL 3297059, at *2 (N.D. Cal. July 2, 2024) ("Although these facts are sufficient to allege knowledge about some issues with Bolt batteries, they are not sufficient to reasonably infer that GM knew prior to the sale that the batteries for plaintiff's specific [2020] Bolt model had defects impacting its safety and mileage range."); *Guzzetta v. Ford Motor Co.*, 2:21-cv-09151-MEMF-PVCx, 2022 WL 18674949, at *11 (C.D. Cal. Nov. 29, 2022) (finding that, where the vehicle purchased by the plaintiffs "was of a different model year—2019, versus the 2018 model that is the subject of the alleged

---

[1] The Court notes that Plaintiff's Response brief mentions additional allegations that are absent from the Complaint. Specifically, Plaintiff's Response asserts that "[b]y August 2020, General Motors was made aware of at least 12 fires involving the Chevrolet Bolt" and "[i]n October 2020, the [NHTSA] opened an investigation into the Chevrolet Bolt." (ECF No. 6 at 3.) Even if the Court were to consider these additional allegations, they would not support a reasonable inference that Defendant was aware of the alleged issues with 2021 Bolts at the time Plaintiff purchased the Subject Vehicle.

complaints dating back to January 2018," the plaintiffs "failed to establish that [the defendant] had knowledge of the alleged Transmission Defect in *their particular vehicle*"). The Court finds that Plaintiff's allegations regarding Defendant's purported knowledge of issues with prior Bolt models do not support a reasonable inference that Defendant knew of and misrepresented any issues with 2021 Bolts, including the Subject Vehicle.

Plaintiff's allegations regarding the 2021 recall and Hill's letter representing that Defendant would replace the battery in the Subject Vehicle similarly fail to establish that Defendant knew its representations were false at the time Plaintiff purchased the Subject Vehicle. While Plaintiff does not specify the month in 2021 that Defendant issued the recall notice, the Complaint indicates that it was issued after Plaintiff purchased the Subject Vehicle in February 2021. (*See* Compl. ¶ 30 ("[O]nce the recall was issued, Plaintiff was not able to charge [his] vehicle safely in the garage.") Additionally, as Defendant points out, Plaintiff alleges that Hill sent him the letter about replacing the Subject Vehicle's battery in December 2021, months after Plaintiff had purchased the Subject Vehicle. (*See* ECF No. 5 at 9; Compl. ¶¶ 49–50.)[2] Courts have held that post-purchase communications and recall notices cannot plausibly support an inference that the defendant knew that its representations were false at the time of the sale. *See Vidana v. Gen. Motors LLC*, No. 2:23-cv-06986-MCS-AGR, 2024 WL 1680064, at *4 (C.D. Cal. Feb. 27, 2024) (concluding that, where the plaintiff had leased or purchased the vehicle at issue in 2020, she could not use a 2021 recall notice "to support the knowledge element of her fraud claims" because "any post-transaction knowledge would not demonstrate knowledge of the

---

[2] Plaintiff's Response brief asserts that "Plaintiff was … duped into keeping the vehicle when Mr. Hill and General Motors reneged on the promise to provide a replacement battery that does not contain the defects in Plaintiffs' [sic] battery." (ECF No. 6 at 4.) To the extent Plaintiff intended to rely on his allegations about Hill's letter to assert an additional theory for his fraudulent misrepresentation claim, i.e., that Defendant fraudulently misrepresented that it would replace Plaintiff's battery, such a theory is not clear from the allegations of the Complaint. The "Affirmative Misrepresentation" section of Plaintiff's fourth cause of action discusses only Defendant's alleged misrepresentations regarding the Subject Vehicle's "long range capability" and safety and does not reference Hill's letter or any promises to replace the Subject Vehicle's battery. (*See* Compl. ¶¶ 91–94.)

representation or concealment of material facts at the time of the transaction, as required to state a claim for fraud"); *Epperson v. Gen. Motors LLC*, 706 F. Supp. 3d 1031, 1039 (S.D. Cal. 2023) (finding that allegations that the defendant issued a recall notice after the plaintiff had purchased the vehicle in question "[did] not plausibly support Plaintiff's conclusory allegation that Defendant was aware of the 'defect' at the time of sale"). The Complaint accordingly does not sufficiently allege Defendant's knowledge, at the time of Plaintiff's purchase, that its representations about the Subject Vehicle were false.

Plaintiff fails to adequately allege a fraud claim under a theory of fraudulent misrepresentation.

### 2.    Fraudulent Concealment

Defendant contends that Plaintiff's fraud claim allegations do not meet the particularity requirement under Rule 9(b). Defendant contends that Plaintiff's fraudulent concealment claim is barred by the economic loss rule because Plaintiff only seeks economic damages as a result of purchasing the Subject Vehicle, including that Plaintiff would not have purchased the Subject Vehicle and has only suffered fear and anxiety. Defendant contends that Plaintiff's fraudulent concealment claim fails because Plaintiff fails to allege a relationship between the parties giving rise to a duty to disclose. Defendant contends that the Complaint does not allege that Plaintiff purchased the Subject Vehicle from Defendant and purchased it from an authorized third-party dealership. Defendant contends that Plaintiff's allegations of purchasing express warranties does not establish a transactional relationship with Plaintiff because he purchased the express warranties from the third-party dealership and Plaintiff does not have a direct transactional relationship with Defendant.

Plaintiff contends that Defendant and Plaintiff entered into a contract—the warranty agreement—that created a transactional relationship between the parties. Plaintiff contends that "Plaintiff purchased the vehicle from a General Motors dealership, General Motors backed the purchase with an express warranty and General Motors' authorized dealerships

are its agents for purposes of the sale of General Motors vehicles to customers." (ECF No. 6 at 7.)

"[T]he elements of a cause of action for fraud based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (Ct. App. 2009) (quotations and citations omitted). "A duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty" or a "transactional relationship," "such as seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (Ct. App. 2017) (quotations and citations omitted). "Such a transaction must necessarily arise from direct dealings between the plaintiff and the defendant; it cannot arise between the defendant and the public at large." *Id.* at 312.

Some district courts within the Ninth Circuit apply "a relaxed Rule 9(b) standard where the claim rests on an alleged fraudulent concealment because, when the fraud is conducted by concealment, the plaintiff is inherently less able to plead the specific time, place, or content of the omission relative to an active misrepresentation." *Poston v. Gen. Motors, LLC*, No. 24-cv-0082-BAS-JLB, 2024 WL 3558377, at *5 (S.D. Cal. July 22, 2024) (citing *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015); *Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011)). Nevertheless, the "relaxed" standard "does not eliminate Rule 9(b)'s requirements that the plaintiff plead with particularity all other elements of his claim." *Id.* (citing *Kearns*, 567 F.3d at 1127). In particular, a plaintiff "must point to specific affirmative acts [d]efendants

14

took 'in hiding, concealing[,] or covering up the matters complained of.'" *Id.* (quoting *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022)).

Here, Plaintiff alleges that Defendant concealed a material fact and Plaintiff would not have purchased or would have paid less for the Subject Vehicle had he known the concealed fact. (*See* Compl. ¶ 97 ("Defendant concealed and suppressed the fact that the vehicle could not achieve its expected range and safety due to the overheating battery."), ¶ 103 ("[Plaintiff] would not have purchased the vehicle or would have paid significantly less for the vehicle.").) Plaintiff alleges that he purchased the Subject Vehicle from a General Motors authorized dealer and agent, and Defendant "issued an express warranty which would only be issued by GENERAL MOTORS as a result of the sale of the vehicle." *Id.* ¶ 5; *see also id.* ("The dealership is an agent of GENERAL MOTORS for purpose of the sale."), ¶ 100 ("Defendant had a duty to disclose that the battery in the vehicle is unsafe at the point of purchase because (1) Defendant had exclusive knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range, battery safety, and performance of the vehicle that were misleading without disclosure o[f] the fact that the vehicle contained unsafe batteries that caused the vehicle to overheat and pose a risk of fire.").

The Complaint fails to allege Plaintiff's fraudulent concealment claim with the requisite particularity because it does not sufficiently specify the "who," "what," "when," and "where" of Defendant's alleged fraudulent concealment. *See Poston*, 2024 WL 3558377, at *5. The Complaint conclusorily alleges that "Defendant took affirmative actions to conceal the material facts." (Compl. ¶ 100.) The Complaint does not, however, allege with particularity the specific affirmative acts that Defendant took to conceal the alleged issues with the Subject Vehicle's battery. *See Poston*, 2024 WL 3558377, at *5 (dismissing the plaintiff's fraudulent concealment claim where the plaintiff failed to "point[ ] to any specific acts [the defendant] took"); *Hornby v. Gen. Motors, LLC*, No. 3:24-cv-00079-JAH-VET, 2024 WL 3907050, at *4 (S.D. Cal. Aug. 22, 2024) (same);

*Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D Cal. 2013) (concluding that the plaintiff's "conclusory assertion that Defendants 'actively concealed material facts from Plaintiff and the Class'" was "deficient" because it "fail[ed] to allege any specific facts demonstrating that … [Defendants] *actively* tried to conceal the existence of the [material facts]"). The Complaint thus fails to plead Plaintiff's fraudulent concealment claim with the particularity required under Rule 9(b). Defendant's Motion to Dismiss the fraud claim under a theory of fraudulent concealment is granted.[3]

### B.    UCL Claim

Plaintiff brings a claim for violation of the UCL based on the "fraudulent," "unlawful," and "unfair" prongs.

Defendant contends that Plaintiff has failed to establish equitable jurisdiction for his UCL claim. Defendant contends that Plaintiff's UCL claim should be dismissed based on the fraudulent prong for failure to allege fraud with particularity. Defendant contends that Plaintiff's UCL claim should be dismissed based on the unlawful prong because Plaintiff fails to identify an underlying statute. Defendant contends that Plaintiff's UCL claim should be dismissed based on the unfair prong because Plaintiff fails to "reference any established public policy that [General Motors'] actions have violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous." (ECF No. 5 at 25.)

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200, 17203. "Because the statute is written in the disjunctive, it is violated if a defendant violates any of the unlawful, unfair or fraudulent prongs." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012)).

/ / /

---

[3] Because the Court concludes that Plaintiff has not alleged his fraudulent concealment claim with the requisite particularity, the Court does not reach Defendant's alternative arguments that Plaintiff fails to allege a transactional relationship or that the economic loss rule bars Plaintiff's fraudulent concealment claim.

### 1.    Equitable Jurisdiction

Defendant contends in the Motion to Dismiss and its Reply brief that "Plaintiff has not established equitable jurisdiction for his UCL claim." (ECF No. 5 at 10; ECF No. 7 at 9.) Plaintiff does not respond to this contention or otherwise provide support for his UCL claims in his Response brief.

"Equitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022). While subject matter jurisdiction concerns "'whether the claim falls within the limited jurisdiction conferred on the federal courts' by Congress," equitable jurisdiction concerns "whether consistently with the principles governing equitable relief the court may exercise its remedial powers." *Id.* (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975)); *see Yuba Consol. Gold Fields v. Kilkeary*, 206 F.2d 884, 887 (9th Cir. 1953) ("Reference to 'equity jurisdiction' does not relate to the power of the court to hear and determine a controversy but relates to whether it ought to assume the jurisdiction and decide the cause."). Federal courts sitting in diversity can only award equitable relief under state law if there is no adequate legal remedy. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Where "monetary damages provide[ ] an adequate remedy," a federal court may not consider the merits of equitable claims for restitution, disgorgement, or injunctive relief. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75–76 (1992). Additionally, certain consumer protection statutes—including the UCL—provide only equitable remedies. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Ct. App. 2009) ("The remedies available in a UCL … action are limited to injunctive relief and restitution."). Thus, in federal court, a plaintiff must establish that he lacks an adequate remedy at law before securing relief under the UCL. *See Sonner*, 971 F.3d at 844.

Although "the burden plaintiffs face to establish the 'lack of an adequate legal remedy' is certainly lower at the pleading stage than it is at the MSJ or 'eve of trial' stages," "a plaintiff must still actually plead the lack of an adequate remedy at law" in order for his

UCL claim to survive a motion to dismiss for lack of equitable jurisdiction. *Salvestrini v. Gen. Motors, LLC*, No. 3:23-cv-1556-W-DDL, 2024 WL 3626695, at *6–7 (S.D. Cal. Aug. 1, 2024). In *Sonner*, the Ninth Circuit concluded that it lacked equitable jurisdiction because "the operative complaint does not allege that [the plaintiff-appellant] lacks an adequate legal remedy." 971 F.3d at 844. *Sonner* therefore requires plaintiffs to, at minimum, plead that legal remedies are inadequate before asserting a claim for equitable relief. *See Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) ("[M]any other district judges applying *Sonner* have understood it to require that a plaintiff must, at minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) ("Under *Sonner*, the plaintiffs are required, at minimum, to plead that they lack an adequate remedy at law[.]").

Where plaintiffs assert causes of action under both the Song-Beverly Act and the UCL, courts regularly determine that plaintiffs have an adequate remedy at law and accordingly dismiss the UCL claims. *See Leslie v. Gen. Motors LLC*, No. 1:24-cv-00915-JLT-SAB, 2024 WL 4190072, at *7 (E.D. Cal. Sept. 13, 2024) (concluding that equitable jurisdiction did not exist over the plaintiff's UCL claim because the plaintiff "ha[d] an adequate remedy at law" under the Song-Beverly Act and "ha[d] brought such claims in this action"), *adopted by* No. 1:24-cv-00915-JLT-SAB, 2024 WL 4374131 (E.D. Cal. Oct. 2, 2024); *Velazquez*, 2024 WL 3617486, at *8 (dismissing plaintiff's UCL claim for lack of equitable jurisdiction where the plaintiff "ha[d] not alleged that he ha[d] no adequate remedy at law. Indeed, plaintiff specifically seeks remedies under the Song-Beverly Act."); *Romani v. Gen. Motors LLC*, No. 24-cv-00067-EJD, 2024 WL 3995333, at *4 (N.D. Cal. Aug. 28, 2024) (collecting cases where courts dismissed UCL claims because the plaintiffs "ha[d] an adequate remedy at law under the Song-Beverly Act").

Here, Plaintiff asserts claims against Defendant for violations of the Song-Beverly Act and seeks damages in connection with those claims. (*See* Compl. ¶¶ 57–89.) Plaintiff does not plead that he lacks an adequate remedy at law or allege any facts demonstrating

that his legal remedies are inadequate. Accordingly, the Court finds that it lacks equitable jurisdiction over his UCL claim.

The Court finds that Plaintiff's UCL claim must be dismissed for failure to establish equitable jurisdiction.

### 2. Fraudulent Prong

As the Court finds above, the Complaint fails to identify false and misleading representations made by Defendant and allegations to support a fraud claim sufficient to satisfy the heightened pleading requirement. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim."). Accordingly, even if the Court had equitable jurisdiction over Plaintiff's UCL claim, the Court finds that the Complaint does not adequately state a UCL claim under the "fraudulent" prong or under any prong for misleading and false representations.[4]

### 3. Unlawful Prong

The "unlawful" prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices" that are "independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "[V]irtually any state, federal, or local law can serve as the predicate." *Friedman*, 855 F.3d at 1052.

Here, with respect to the "unlawful" prong, the Complaint does not allege a violation of a specific statute. To the extent Plaintiff intended to bring the UCL claim based upon a violation of the Song-Beverly Act, the Complaint does not allege facts sufficient for the Court to make this inference. Moreover, the allegations pertaining to the unlawful prong sound in fraud, and the Court finds above that Plaintiff has not adequately alleged an

---

[4] The Complaint appears to allege Plaintiff's UCL claim under the "fraudulent" prong solely with regard to Defendant's alleged fraudulent misrepresentations. (*See* Compl. ¶ 128 ("As alleged herein, the *misrepresentations* by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200." (emphasis added)).) Nevertheless, to the extent Plaintiff also intends to base his UCL claim on Defendant's alleged fraudulent concealment, the Complaint similarly fails to state this predicate act with particularity.

underlying claim for fraud. (*See, e.g.*, Compl. ¶ 133 ("Defendant's use of a defective battery, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct."), ¶ 135 ("As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.").) Accordingly, even if the Court had equitable jurisdiction over Plaintiff's UCL claim, Plaintiff does not adequately plead a violation of a predicate law and does not state a claim for relief under the "unlawful" prong.

### 4.    Unfair Prong

The "unfair" prong of the UCL prohibits "practice[s] [that] may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns*, 20 Cal. 4th at 180.

> Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (quotations and citations omitted). Determining whether a defendant's conduct was unfair "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Friedman*, 855 F.3d at 1055 (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).

Here, Plaintiff alleges that Defendant's use of the defective battery in the vehicle did not confer a benefit to Plaintiff, causes injuries to consumers and Plaintiff who cannot use or park the vehicles as reasonably expected, and causes injuries to Plaintiff who overpaid for the vehicle and received a vehicle of lesser quality than expected. (*See* Compl. ¶¶ 110–113.) Plaintiff alleges that Defendant's use of the battery in the vehicle is outweighed by

the injuries the battery causes. Plaintiff alleges that "Defendant's conduct of using the defective battery in the vehicle has no utility and financially harms purchasers" and "the utility of Defendant's conduct is vastly outweighed by the gravity of harm." *Id.* ¶ 116. Plaintiff appears to bring the UCL claim under the "unfair" prong based on the "balancing" test, i.e., "whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe*, 982 F.3d at 1215. Viewing the allegations in the light most favorable to Plaintiff, the Complaint adequately alleges that the alleged injuries from Defendant's use of the battery outweigh Defendant's "reasons, justifications and motives" for selling a faulty vehicle. *Id.* The Court finds that this is not one of the "rare situations" in which resolution of whether Defendant's conduct was unfair is appropriate on a motion to dismiss. *Friedman*, 855 F.3d at 1055. Thus, absent the equitable jurisdiction issue, Plaintiff has sufficiently alleged a cause of action under the unfairness prong of the UCL.

## C.    Leave to Amend

Federal Rule of Civil Procedure 15 mandates that the court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In determining whether to allow an amendment, a court considers whether there is "undue delay," "bad faith," "undue prejudice to the opposing party," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Not all of the [*Foman*] factors merit equal weight.... [I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap.*, 316 F.3d at 1052 (citation omitted). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052.

Defendant requests that the Court dismiss Plaintiff's fourth and fifth causes of action with prejudice, contending that "there is no basis for granting Plaintiff leave to amend the

Complaint." (ECF No. 5 at 9, 16.) Defendant attaches an excerpt of a transcript from a court hearing in a Northern District of California case where Plaintiff's counsel is representing another plaintiff in a similar suit that alleges the same causes of action against Defendant. (*See* ECF No. 5-1 at 6–13.) Defendant contends that the Court should take into consideration Plaintiff's counsel's statement that "allegations involving Mr. Steve Hill's letter to Plaintiff represent their 'best shot' at establishing their fraud claims." (ECF No. 5-1 ¶ 5.)

Notably, Defendant does not request that the Court take judicial notice of this transcript excerpt. (*See* ECF No. 5-2 (requesting judicial notice of only the Environmental Protection Agency's range estimates for 2020–2022 model-year Chevrolet Bolts).) "[W]hile the Court 'may take judicial notice of the existence of unrelated court documents, … it may not take judicial notice of such documents for the truth of the matter asserted therein.'" *Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1014 (S.D. Cal. 2016) (quoting *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010)). Here, Defendant seems to request that the Court consider the contents of the transcript for "the truth of the matter asserted therein"—specifically, that Plaintiff's counsel believes he has taken his "best shot" at alleging (at least some of) his clients' fraud claims.

Plaintiff's Response does not address Defendant's inclusion of this transcript excerpt. Plaintiff does not explicitly request leave to amend, but notes in his Response that "the warranty agreement for the subject vehicle … can be attached to an amended complaint." (ECF No. 6 at 6.)

Defendant does not argue that it will be prejudiced if the Court grants Plaintiff leave to amend. Instead, Defendant's argument is based on the purported futility of amendment. Even if the Court were to consider Plaintiff's counsel's statements in the transcript excerpt, the Court is not inclined to assume that Plaintiff's counsel was speaking on behalf of all his clients, including this Plaintiff. The Court finds that it is not yet clear, in this case, that granting leave to amend would be futile. *See Bacon v. Woodward*, 104 F.4th 744, 753 (9th

Cir. 2024) (noting that the Ninth Circuit "[has] repeatedly held that 'a district court should grant leave to amend *even if no request to amend the pleading was made*, unless it determines that the pleading could not be cured by the allegation of other facts'" (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000))).

The Court accordingly grants Plaintiff leave to amend the Complaint.

## V.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 5) is granted.[5] Plaintiff may file an amended complaint, entitled "First Amended Complaint," within fourteen (14) days of the entry of this Order. If no amended complaint is filed within fourteen (14) days, Defendant must file an answer within twenty-one (21) days of the entry of this Order.

Dated:  November 14, 2024

Hon. William Q. Hayes
United States District Court

---

[5] Defendant's request for judicial notice of the estimated mileage range for Chevrolet Bolt model years 2020–2022 (ECF No. 5-2) is denied as the Court need not consider this fact in ruling on the Motion to Dismiss. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

24-cv-745-WQH-SBC